The opinion of the court was delivered by
McBnery, J.
Mrs. Emma Freud, widow of J. H. Tucker, sued the *116 defendant company for $25,000 damages, for the bodily suffering of her husband and her pecuniary loss in his death, caused by the falling of lumber sheds situated on property belonging to'defendant, in square bounded by Delord, Rampart, Euphrosine and Franklin streets in the City of New Orleans, on the 12th of September, 1887.
This suit was brought under the provisions of Art. 2315, R. C. C. The defence is a general denial. There was a verdict and judgment in favor of plaintiff for $7,500, from which the defendant appealed.
The facts are as follows:
The buildings on defendant’s lots were a series of sheds adjoining' each other, and running from Delord through to Euphrosine street. They were strong enough, and suitable for the purpose for which they had been erected, the storing of lumber. A shed awning extended over Delord street, for a distance of 100 feet. The defendant’s agent, O’Conner, who had control of the property, employed one Paland, to keep trespassers from the premises, who had been engaged in dismantling the sheds. These depredations had been going on for some two weeks prior to the falling of the sheds. There was no organized force by large bodies, but they were committed at such times as suited the convenience of the individual trespassers. The sheds were weakened by the continuous displacing of material, and in the afternoon of September 12, 1887, a greater portion of the sheds suddenly fell. The husband of plaintiff, J. H. Tucker, was found dead under the debris on the banquette on Delord street. He was in failing health, and had left his home but a short time prior to the accident for a walk.
The defendant concedes that if the buildings had fallen from a failure to comply with the provisions of Art. 2322 C. O., the liability of the company would be fixed without contributory negligence on the part of Tucker. But the company denies that the accident was caused by failure to comply with the provisions of said article of the Code, but affirms that it was caused by the unlawful acts of third persons, trespassers, who invaded the premises in swarms and literally pulled the sheds down on the afternoon of September 12, 1887. There is no evidence in the record that trespassers were present on this day in greater numbers than at any previous time.
There is no proof that there was any over-powering force. On the contrary, it is established that these depredations or trespasses were the effects of individual trespassers for the purpose of individual *117 gain. Portions of the inclosures of the premises were down and passage ways were left open, and thus an opportunity, if not an invitation, was given by defendant for trespassing.
There is some controversy about notice having been given to the defendant company through its agent, O’Conner, as to the weakened condition of the shed caused by taking away material. But it was not necessary to serve any notice on the defendant company. It was bound to know the condition of its property. Ignorance of its condition resulting from complete lack of proper and prudent attention can be no excuse for any accident caused by its weakness. The law makes it the duty of the. owner of a buiiding to keep it in proper .order so that no one may be injured by it.
An inspection of the building would have disclosed the acts of the trespassers. Barnes vs. Beirn, 88 An. 280.
In this case the defendant’s standard of duty was fixed and its measure defined by law. It is the same under all circumstances and its omission is negligence per se. There can be no difference in principle whether the building has been made unsafe by the agencies of time, weather or trespass, which it was in the power of the owner to prevent. In any event, and under all these circumstances, it is the duty of the owner to keep his building in that condition of safety that no one will be injured by its fall.
The defendant company in its brief says:
“ The man in charge, supposed to be Mr. Paland, was among the killed, and of course it can not therefore be stated whether he took part in the demolition or invited or suffered the trespasses to do this outrageous act, or whether he tried to prevent it.
“If he was a party to 'the act, or a silent bystander, suffering it to be done without resistance, and if the plaintiff was not an actor in the proceedings, and was harmlessly walking by at the time without knowledge of the danger, then defendant is liable under the law. ’ ’
The defendant company did not exhaust its duties in the appointment, if one was made, of a party to watch the sheds. An efficient protection of the sheds was required, such as to prevent them from being put in a dangerous condition. The sheds in fact were practically abandoned to their fate.
There is no evidence to connect plaintiff’s husband with the trespassers. He was harmlessly walking on the banquette without *118 knowledge of the danger. The owner must know the condition of his property and the company was aware of these trespassers and the effect they had to weaken the buildings. It was its duty to warn the public of danger.
There is, in our opinion, not the slighest doubt of the responsibility of the defendant company, but we think the amount of damages allowed by the jury is too large.
The husband of the plaintiff was in bad health. He was 53 years of age. He had been out of employment for one year. His occupation was that of steward on a steamboat during the boating season, and he earned from §75 to §80 per month when employed. His death was instantaneous, and therefore only actual damages are claimed for the pecuniary loss sustained by plaintiff.
Under these circumstances we think §2,500 will be a just and proper amount to allow for the pecuniary loss suffered by plaintiff in the death of her husband.
The judgment appealed from is therefore amended, so as to give' the plaintiff the sum of §2,500 as damages, and in all other respects it is affirmed, plaintiff to pay costs of appeal.